**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **ANDRE M.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-18-1669** |
| | ) | |
| **ANDREW SAUL,[1]** | ) | |
| | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Andre M. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claims for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 13, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 14. The Court has reviewed the motions, the related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** and

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of Social Security. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

**REMANDS** the Administrative Law Judge's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I.      Procedural Background

The instant proceeding represents Plaintiff's second application for DIB and SSI. Plaintiff filed for DIB under Title II and SSI under Title XVI for the first time on January 22, 2007. R. 114. Plaintiff's claims were initially denied on May 8, 2007 and denied after reconsideration on August 7, 2007. R. 114. An administrative hearing was held on January 23, 2009, R. 114, and on May 12, 2009, an ALJ found Plaintiff was not disabled and denied his claims, R. 126.

On October 19, 2015, Plaintiff filed his second claim for DIB under Title II and SSI under Title XVI. R. 127–46, 172. Plaintiff alleged disability beginning January 1, 2005. R. 128, 138, 172. Plaintiff alleged disability due to hyperlipidemia (not elsewhere classifiable), chronic viral hepatitis C (without hepatic coma), human immunodeficiency virus ("HIV"), Bipolar I Disorder, tinea pedis, hypertension (benign essential), rhinitis, abnormal blood findings, post-traumatic stress disorder ("PTSD"), anxiety, and depression. R. 127, 137. Plaintiff's claims were initially denied on March 2, 2016, and upon reconsideration on May 19, 2016. R. 136, 146, 149–66, 172. A video hearing was held on April 10, 2017. R. 127, 172. On July 5, 2017, Plaintiff's claims were denied. R. 181. Plaintiff sought review by the Appeals Council, which concluded on April 18, 2018, that there was no basis for granting the Request for Review. R. 1–7. Plaintiff appealed that decision by filing the instant proceeding on June 6, 2018. ECF No. 1.

## II.    Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court

3

uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in §§ [404.1509/416.909], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.905(a) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1505(a), 416.905(a (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1505(a), 416.905(a), 416.920(e), and 416.945 (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545(a), 416.905(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

## III.    Analysis

In this matter, the ALJ evaluated Plaintiff's claims using the five-step sequential evaluation process. R. 175–81. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2005, the date he alleged his disability commenced. R. 175. At step two, under 20 C.F.R. §§ 404.1520(c), 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: "hepatitis C virus with stage 2 fibrosis, human immunodeficiency virus (HIV), diabetes mellitus, hypertension, coronary artery

disease, chronic left leg spasms, mood disorder, and polysubstance abuse." R. 174. The ALJ found the aforementioned impairments to be severe as "each of these impairments [had] a more than minimal impact on the Plaintiff's ability to perform basic work activities . . . ." *Id.* Plaintiff alleged that he also suffered from obesity, allergies, and asthma, but the ALJ noted those were "non-severe" because Plaintiff's weight did not appear to have an effect on his other impairments and the asthma and allergies caused "no complaints, need for hospitalization, or other concerns." *Id.* In step three, the ALJ determined that Plaintiff did not have "an impairment or a combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 176. At step four, the ALJ determined that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. [Plaintiff] requires the use of a cane, only for prolonged ambulation or over uneven terrain. He is able to perform simple and repetitive work.

R. 177. The ALJ then determined that Plaintiff was unable to perform his past relevant work as a "Commercial Cleaner." R. 179. In coming to this conclusion, the ALJ relied upon the testimony of a vocational expert ("VE"). *Id.* With the help of testimony from the VE, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." R. 180. Accordingly, Plaintiff's claims for DIB and SSI were denied. R. 181.

On appeal, Plaintiff requests that the Court grant summary judgment in his favor or, in the alternative, reverse and remand this matter to the Social Security Administration ("SSA") for a new administrative hearing. Pl.'s Mem. 16. For the reasons set forth below, the Court hereby

**DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision in part and **REMANDS** the matter for further proceedings.

> ### A. *The ALJ erred in his evaluation of Plaintiff's obesity, but the error was ultimately harmless as Plaintiff failed to meet his burden to submit sufficient evidence to support his claimed impairment.*

Plaintiff argues that the ALJ failed to properly evaluate his obesity. Pl.'s Mem. 8. According to Plaintiff, the ALJ simply stated that Plaintiff's obesity was "mild" and failed to explain how he came to that determination. *Id.* As Social Security Ruling ("SSR") 02-1p explains, obesity exists when an adult, male or female, has a Body Mass Index ("BMI") of 30.0 or above. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). The ruling further elaborates that an individual with a BMI greater than or equal to 40.0 is considered to have "extreme" obesity, while an individual with a BMI between 25.0 and 29.9 is considered "overweight." *Id.* Throughout the sequential evaluation process, an ALJ is required to fully evaluate the effect a claimant's obesity has, both alone and in conjunction with other impairments, on the claimant's ability to perform work related activities. *Id.* at *3–7. As one would expect, someone with extreme obesity has the greatest risk for developing obesity-related impairments. *Id.* at *2.

At step two of the sequential evaluation, an ALJ must determine whether a claimant is obese, and if that obesity rises to the level of a severe impairment. *Id.* at *4. To make this determination, an ALJ generally relies on the assessment of a claimant's physician and other relevant information from the record in determining whether obesity exists as an impairment. *Id.* at *3. Obesity is considered "a severe impairment when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. Obesity is found to be "'not

severe' only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities." *Id.*

At step three, an ALJ must evaluate whether a claimant with obesity meets or equals the requirements of a listing under the Listings of Impairments in 20 C.F.R., subpart P, appendix 1 (the "Listings"). *Id.* at *5. There is no Listing specifically for obesity; however, "an individual with obesity 'meets' the requirements of a [L]isting if he has another impairment that by itself, [or in combination with obesity,] meets the requirements of a [L]isting." *Id.* It is possible for an individual to be deemed disabled based on obesity alone if the obesity impairment is found to be severe and medically equals a Listing at step three. *Id.* at *4. Additionally, an ALJ must consider whether a Listing is met if the individual has multiple impairments, including obesity, that do not individually meet the requirements, but the combination of which is equivalent in severity to a listed impairment. *Id.* at *5.

Before proceeding to step four, an ALJ must evaluate all of a claimant's severe and non-severe impairments to determine his RFC. SSR 96-8p, 1996 WL 374184, at *5. Since obesity can impose limitations on a claimant's functional abilities, an ALJ is required to assess and explain the ways in which an obesity impairment hinders a claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* Additionally, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* An ALJ is required to explain how she reached her conclusion "on whether obesity caused any physical or mental limitations." *Boston v. Barnhart,* 332 F. Supp. 2d 879, 886 (D. Md. 2004) (finding reversible error when an ALJ fails to mention a plaintiff's obesity at all in the determination of his RFC).

An ALJ relies on a claimant's RFC to determine whether a claimant's impairments prevent him from performing his past relevant work, or any other work that exists within the national economy, at steps four and five. SSR 02-1p, 2002 WL 34686281, at *3. Accordingly, an error in the sequential evaluation must be assessed to determine what, if any, effect it had on the overall outcome of the claim. *See, e.g.*, *Fountain v. Astrue*, Civ. A. No. CBD-11-1884, 2013 WL 145873, at *4 (Md. D. Jan. 11, 2013) ("Therefore, the court must determine whether the ALJ sufficiently considered the allegedly severe impairment, or whether an erroneous conclusion 'infected' the other steps."). In certain cases, an ALJ's failure to consider a claimant's obesity more thoroughly can be cured by the ALJ's reliance on an opinion by a medical expert. *See, e.g.*, *Hynson v. Astrue*, Civ. A. No. TMD 10-175M, 2011 WL 2175035, at *4 (D. Md. June 2, 2011) ("Although it would have been helpful for the ALJ to include a more detailed discussion regarding [the claimant's] obesity, the Court finds that any error was harmless as his adoption of virtually all of [the consultative examiner's] limitations demonstrates sufficient consideration.").

In this case, the record contains evidence of Plaintiff's obesity, which ranged from a low BMI of 31.97 to a high BMI of 36.8. R. 40, 59. According to SSR 02-1p, this BMI would fall into the category of "obesity" ranging between Level I and Level II.[2] SSR 02-1p, 2002 WL 34686281, at *2. In his decision, the ALJ only explicitly discussed Plaintiff's obesity in step two of the sequential evaluation process. Specifically, the ALJ noted Plaintiff's weight and stated— without citing to any evidence in the record—that Plaintiff's obesity "does not appear to have an

---

[2] "The National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults [(the 'Clinic Guidelines')]." SSR 02-1p, 2002 WL 34686281, at *2. According to the Clinic Guidelines, there are three levels of obesity: "Level I includes BMIs of 30.0–34.9. Level II includes BMIs of 35.0–39.9. Level III . . . includes BMIs greater than or equal to 40." *Id.* While "[t]hese levels describe the extent of obesity," SSR 02-1p clearly states that they "do not correlate with any specific degree of functional loss." *Id.*

impact on his other impairments, nor to affect, on its own, his ability to perform basic work activities." R. 175. The ALJ then concluded that Plaintiff's obesity was a "non-severe" impairment and that it did not "meet the requirements of SSR 02-1p." *Id.* This cursory analysis contains an insufficient explanation for how the ALJ came to his determination regarding Plaintiff's obesity. *Boston,* 332 F. Supp. 2d at 886. Further, the ALJ did not provide a more in-depth discussion of Plaintiff's obesity later in the sequential evaluation process nor did he rely upon an expert's opinion that examined Plaintiff's obesity. *See Cuba v. Comm'r, Soc. Sec.*, Civ. No. JKB-17-2943, 2018 WL 4353480, at *2 (D. Md. Sept. 12, 2018), report and recommendation adopted, No. Civ. JKB-17-2943, 2018 WL 6344199 (D. Md. Oct. 1, 2018) (finding that while "the ALJ's discussion of [the claimant's] obesity during the [L]isting analysis was limited, the ALJ later cited to medical records and thoroughly evaluated the effects of obesity on [the plaintiff's] RFC elsewhere in the decision"); *see also Hynson*, 2011 WL 2175035, at *4. Accordingly, the ALJ's failure to fully analyze Plaintiff's obesity was not cured in subsequent steps of the sequential evaluation process.

Despite the ALJ's lack of explanation, the Court finds remand is not warranted. As previously stated, Plaintiff bears the burden of proof in steps one through four. *See Hunter v. Sillivan*, 993 F.2d 31, 35. In his memorandum, Plaintiff asserts that his "obesity likely impacts [his] diabetes, hypertension, bipolar disorder, and other impairments. Additionally, [Plaintiff's] obesity most likely impacts his ability to ambulate given he needs a cane." Pl.'s Mem. 8–9. However, Plaintiff fails to point to evidence in the record supporting these claims. In fact, a review of the record reveals no clear indication that Plaintiff's obesity impacted his other impairments. For example, although medical professionals noted that Plaintiff was counseled to maintain a healthier diet and lose weight in general, the Court could not find any instance where

a medical professional specifically advised Plaintiff that his weight was exacerbating his diabetes. *See, e.g.*, R. 382, 389 (listing under "comments" that Plaintiff was "obese but in no distress"). As another example, the Court has reviewed the record and found no instance where a medical professional indicated that Plaintiff's weight was contributing to his ambulatory issues in general. While the impact obesity has on a person's health may seem like an obvious conclusion to infer, "[t]he claimant carries the burden of showing how [his] obesity limits [his] ability to perform work-related functions." *Hoeffler v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-11-2332, 2013 WL 2470084, at *1 (D. Md. June 6, 2013) (citing to *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995)). The Court finds that while the ALJ did not properly explain how he evaluated Plaintiff's obesity, Plaintiff is unable to show prejudice as he "was unable to provide support for—or even identify—how [his] obesity limited [him] to a greater extent than the ALJ found." *Hoeffler*, 2013 WL 2470084, at *1. Accordingly, Plaintiff failed to carry his burden and remand is not warranted on this issue.

### B. The ALJ failed to properly explain why Plaintiff's moderate limitations in concentration, persistence, or pace did not require additional limitations in the RFC.

Plaintiff asserts that the ALJ's RFC finding failed to account for Plaintiff's moderate limitation in concentration, persistence, and pace. Pl.'s Mem. 9. Commissioner argues that the ALJ fully explained why Plaintiff's moderate limitations did not translate into additional work-related limitations in the RFC finding and that there were no unresolved inconsistencies in the record. Comm'r's Mem. 6–7.

In *Mascio v. Colvin*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or maintaining pace beyond limiting a claimant to performing only "simple, routine tasks." 780 F.3d 632, 638

(4th Cir. 2015). This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in his RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). In performing a RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (quoting SSR 96-8p) (internal quotation marks omitted).

> Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.

*Thomas*, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019) (citation omitted); *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" (emphasis original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 187, 189 (4th Cir. 2016)). The functional area of concentration, persistence, or maintaining pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). Since *Mascio*, courts have reviewed various ALJs' attempts to include corresponding limitations in their RFC assessments for moderate

limitations in this functional area.[3] The Fourth Circuit's recent decisions provide additional clarification.

In *Thomas*, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or maintaining pace, and concluded that the plaintiff had a RFC to perform light work with the following additional mental limitations:

> [The plaintiff] is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace. She can have occasional public contact or interaction and frequent, but not continuous, contact or interaction with coworkers and supervisors. [She] must avoid work involving crisis situations, complex decision making, or constant changes in a routine setting.

*Thomas*, 916 F.3d at 310 (citations omitted). In reversing the lower court's decision, the Fourth Circuit made it clear that when an ALJ finds a claimant has moderate limitations in concentration, persistence, or maintaining pace, the ALJ is expected to include "explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations." *Id.* at 312 (citing SSR 96-8P, 1996 WL 374184 at *2). The *Thomas* Court further opined that when an ALJ includes specific terminology in the limitations included in a RFC assessment, she

---

[3] *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals does not address concentration, persistence, or maintaining pace; rather it addresses social functioning); *McDonald v. Comm'r*, Civ. No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements).

must provide sufficient explanation so that the courts can understand what the term means, thus allowing them to "assess whether their inclusion in [a] RFC is supported by substantial evidence." *Id.* (finding the terms "production rate" and "demand pace" to be "not common enough for [the Court] to know what they mean without elaboration"); *see also Perry v. Berryhill*, 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions.'" (citing *Mascio*, 780 F.3d at 636)); *Teresa B. v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (finding the RFC limitation of "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" to be a "clear explanation of the 'production-pace' limitation"); *Ursula G. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-18-1841, 2019 WL 2233978, at *3 (D. Md. May 23, 2019) (finding that failing to define such terminology necessitates remand "in the wake of *Thomas*").

The ALJ in this case found in step three that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace. R. 176. After making this determination, the ALJ went onto state Plaintiff's RFC and include the following limitation: "[Plaintiff] is able to perform simple and repetitive work." R. 177. As established by the Fourth Circuit, this limitation does not account for Plaintiff's moderate limitations in concentration, persistence, or maintaining pace. *Mascio*, 780 F.3d at 638. Absent additional explanation, remand is necessary. *Talmo,* 2015 WL 2395108, at *3.

In the narrative discussion pertaining to the RFC analysis, the ALJ discussed Plaintiff's mental health impairments. R. 178–79. First, the ALJ reviewed the evidence pertaining to Plaintiff's mental health history and treatment. R. 178. The ALJ noted that Plaintiff had a "history of mood symptoms including suicidal ideation, trouble concentrating, and trouble sleeping." *Id.* However, the ALJ also noted that Plaintiff was taking medication and reported "no side effects from his medications, which [Plaintiff] further noted were effective in limiting his symptoms." *Id.* Second, the ALJ noted that Plaintiff "stated he had been working on his GED, and demonstrated a normal mental status including unremarkable behavior, intact memory, average intellect, and good cooperation and mood." *Id.* The ALJ concluded that although Plaintiff's records "show[ed] that he has several limitations as a result of his impairments, they also show[ed] that [Plaintiff] is not as limited as alleged." R. 179. The ALJ specifically noted that Plaintiff took several medications for his mental health impairments "with good response." *Id.* Accordingly, after "taking [Plaintiff's] allegations into consideration," the ALJ concluded that Plaintiff was capable of performing the RFC as the ALJ defined it. *Id.*

The Court finds this explanation is mostly supported by the evidence available in the record. However, the ALJ failed to draw an "explicit conclusion about how [Plaintiff's] mental limitations affect [his] ability to perform job-related tasks for a full workday—a benchmark established by the Administration's own regulations." *Thomas*, 916 F.3d at 312; *see also Lakeisha J. v. Saul*, No. 8:18-CV-01963-GLS, 2019 WL 3720467, at *3 (D. Md. Aug. 5, 2019) (citing SSR 96-8p, 1996 WL 374184, *7)). In fact, at no point in his decision does the ALJ discuss Plaintiff's "ability to sustain work at a competitive pace over a typical workday." *See Beau S. v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-18-2083, 2019 WL 3208002, at *3 (D. Md. July 16, 2019) (reversing and remanding an ALJ's decision where it fails to address this same

capability). While this was only one of the flaws the *Thomas* Court identified in the RFC, the Fourth Circuit has held before that a case can be remanded based upon finding only one of the *Thomas'* flaws. *See Perry*, 765 F. App'x at 873; *see also Ursula G.*, 2019 WL 2233978, at *3 (citing *Perry*, at 873) ("While *Perry* is an unpublished decision, and therefore not binding precedent in this Circuit, it supports the proposition that a case can be remanded when the sole error of the ALJ is the failure to define 'non-production oriented work setting.'"). Ultimately, as the Court has determined remand is warranted in light of other issues, it need not address this question. *See Kim P. v. Comm'r, Soc. Sec. Admin.,* No. Civ. SAG-18-2056, 2019 WL 3413409, at *2–3 (D. Md. July 29, 2019). "In any event, on remand, the ALJ must establish for how long and under what conditions Plaintiff is able to focus his attention on work activities and stay on task at a sustained rate." *Sean P., v. Saul, Comm'r of Soc. Sec.*, Civ. No. TMD 18-2072, 2019 WL 3778706, at *5 (D. Md. Aug. 12, 2019) (citing *Thomas*, 916 F.3d at 312 n.5).

### C. *The ALJ failed to properly explain his determination that Plaintiff required a hand-held assistive device for only a limited purpose.*

Plaintiff claims that the ALJ failed to properly account for Plaintiff's need for a medically required hand-held assistive device in the RFC assessment. Pl.'s Mem. 10. Plaintiff argues that the ALJ failed to explain how he came to his determination that Plaintiff only needed a cane for "prolonged ambulation or over uneven terrain." *Id.* at 10–11. Commissioner counters that the ALJ's finding concerning Plaintiff's need for a hand-held assistive device was "not relevant to the final decision . . . ." Comm'r Mem. 7. Commissioner further argues that even if the finding was relevant, Plaintiff was not prejudiced by any perceived error as the jobs identified at step five could be performed by an individual "staying in the same location throughout the day," thus removing the need for a cane and rendering any error harmless. Comm'r's Mem. 8.

Contrary to Plaintiff's assertion, SSR 96-9p does not require a determination by the ALJ as to whether a hand-held assistive device is necessary; rather, it "provides guidance regarding the required showing for an ALJ to reach the conclusion that a claimant's hand-held device is 'medically required' where an individual is capable of less than a full range of sedentary work." *Morgan v. Comm'r, Soc. Sec.*, Civ. No. JKB-13-2088, 2014 WL 1764922, at *1 (D. Md. Apr. 30, 2014). In other words, SSR 96-9p is "useful in determining if a plaintiff had met [his] burden" of proving his RFC.[4] *Id.* (citing *Timmons v. Colvin*, 3:12CV609, 2013 WL 4775131, *8 (W.D.N.C. Sept. 5, 2013)).

Regardless of the exertional level of work a claimant is deemed capable of performing, "[t]he requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing and pulling." *Cobb v. Astrue*, Civ. A. No. WGC-11-2921, 2013 WL 990323, at *4 (D. Md. Mar. 12, 2013) (internal quotation marks omitted) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(J)(4) (2011)). Accordingly, where an ALJ determines a hand-held assistive device is needed, the ALJ should address whether and to what extent the use of the hand-held device would impact the claimant's other functional capacities, such as with lifting, carrying, pushing, and pulling. *See id.*; *see also Woods*, 888 F.3d 686, 694 ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" (emphasis original) (quoting *Monroe*, 826 F.3d 176, 189)). In *Cobb*, the ALJ found the plaintiff had a RFC to perform light work with limitations, including that he "need[ed] a cane to walk." *Cobb*, 2013 WL 990323, at

---

[4] According to SSR 96-9p, "medical documentation is required to find that a hand-held assistive device is medically required." *Catterton v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-11-1056, 2013 WL 2470082, at *2 (D. Md. June 6, 2013) (citing SSR 96-9p, 1996 WL 374185, at *7).

*2. In remanding the case back to the SSA, the *Cobb* court determined the ALJ erred when he failed to address whether plaintiff's RFC required "any restrictions to pushing and/or pulling with the lower extremities" and failed to determine what the plaintiff's "functional capacity to lift and/or carry due to the unavailability of one of [the plaintiff's] upper extremities (handling the cane)." *Id.* at *4.

An ALJ's failure to evaluate the use of an assistive device and its impact on a claimant's RFC can be deemed harmless error where the jobs relied upon in step five of the sequential evaluation accommodate for individuals with more limitations than the ALJ included in the RFC. *See, e.g.*, *Morgan*, 2014 WL 1764922, at *2; *see also Catteron*, 2013 WL 2470082, at *2. While the court in *Morgan* was unwilling to find the ALJ erred in evaluating the plaintiff's hip pain and use of an assistive device, the court also found that any error the ALJ may have committed was "ultimately proved harmless." *Morgan*, 2014 WL 1764922, at *2. To support this finding, the court noted that the ALJ asked the VE for "positions appropriate for an individual with [the plaintiff's] RFC who was further limited to standing and/or walking no more than four hours per day . . . ." *Id.* In response, the VE gave three possible occupations that would accommodate for that limitation and "exist in significant numbers in the national economy." *Id.* As the ALJ relied upon the existence of those three possible occupations to find the plaintiff was not disabled, any error was harmless as the determination would ultimately be the same. *Id.* Similarly, the court in *Catteron* found any error the ALJ committed in omitting the need for a hand-held assistive device was harmless where the ALJ determined the claimant had the RFC to perform sedentary jobs. *Catteron*, 2013 WL 2470082, at *2. The court held that any need for a cane was already accounted for in the claimant's RFC for sedentary jobs "because by definition, little standing or walking is required to perform sedentary jobs." *Id.*

In his narrative discussion explaining how he came to the RFC determination in this case, the ALJ here noted that Plaintiff testified to having "trouble walking" and "low back pain." R. 177. The ALJ went on to note that Plaintiff has a "history of leg pain" and that he "often presents with a cane . . . ." R. 178. The ALJ then made his determination regarding Plaintiff's RFC and included the limitation that Plaintiff "be afforded the opportunity to use his cane over prolonged ambulation or uneven terrain." *Id.* At no other point in his decision did the ALJ discuss the extent of Plaintiff's need for a cane, whether the ALJ considered Plaintiff's testimony about his need for the cane to be credible, or even what the ALJ deemed to be "prolonged ambulation." The ALJ's cursory explanation leaves the Court with little insight into his decision to include the use of a cane in Plaintiff's RFC. Further, it fails to address the likely implications having a cane might present to other functional capacities that are generally required with light exertional work.[5] *See Cobb*, 2013 WL 990323, at *4. Clearly the ALJ deemed credible some portion of Plaintiff's testimony concerning his leg pain and/or need for a cane and difficulty walking. Absent further explanation, the Court is unable to verify to what extent the RFC accounts for these limitations.

---

[5] According to the regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Commissioner argues that any error in assessing Plaintiff's need for a cane is rendered harmless by the fact that the jobs identified by the VE and relied upon by the ALJ required no movement.[6] Comm'r's Mem. 8. However, unlike the testimony in *Morgan*, the testimony from the VE in the instant matter lacks clarity as to what additional limitations were being included. *See Morgan*, 2014 WL 1764922, at *2 (noting the VE testified to "positions appropriate for an individual with [the plaintiff's] RFC who was further limited to standing and/or walking no more than four hours per day"). In this case, while the ALJ and the VE discussed the need for Plaintiff to "stay in the same location throughout the day," it is unclear what was meant by this limitation.

---

[6] In this case, the ALJ posed questions to a VE during the hearing. Among those questions was the following:

> Q: Okay. For the next hypothetical, I could build up the first hypothetical, but, in this case, the individual would be able to perform light work. Would only occasionally be able to climb ramps and stairs, never climb ladders, ropes or scaffolds. Occasionally stoop, kneel, crouch, crawl. Individual would require a cane for prolonged ambulation in uneven terrain only, and the individual would be limited to simple, repetitive work. So, based on this, these changes, would this – well, assuming this individual wouldn't be able to perform, past work, are you able to identify any occupations that would fit this set of assumptions?

> A: I don't believe so, Your Honor, because of the need to use a cane to ambulate at certain times. For light work, a person really would need to be able to have both hands free at all times.

> Q: Well, how about a cashier where the, there is no extensive or prolonged ambulation or uneven terrain?

> A: Well, as long as they stayed in that same location throughout the day. I could give you some numbers of those jobs. For example, a parking lot cashier, I think that's what you're talking about. DOT 211.462-010. There are approximately 200,000 of those jobs in the national economy. Another job similar would be a ticket seller. DOT 211.467-030. There are approximately 100,000 of those jobs in the national economy.

R. 107–08. Based on this testimony, the ALJ ultimately determined that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 181. This led to the ALJ's determination that Plaintiff was not disabled. *Id.*

In light of the ALJ's conclusory determination that Plaintiff needed a cane to some extent but failure to discuss why or how, if at all, the need for the cane would impact Plaintiff's ability to perform other functions necessary to complete light work, the VE's vague testimony is insufficient to neutralize the error. The Court further finds Plaintiff was prejudiced by this lack of clarity in the ALJ's decision and the VE's testimony. The VE clearly stated that he did not believe there were jobs at the light work exertional level that existed in the national economy for someone who "need[ed] to use a cane to ambulate at certain times." R. 107. According to the VE, "[f]or light work, a person really would need to be able to have both hands free at all times." *Id.* Accordingly, the ALJ failed to meet his burden at step five and remand is necessary on this issue.

> **D. The ALJ properly evaluated the prior RFC determination and found Plaintiff now had only mild limitations interacting with the public, which is supported by substantial evidence available in the record.**

Plaintiff argues that the ALJ improperly assessed the weight to afford the prior RFC determination and failed to explain why Plaintiff could now have full contact with the public. Pl.'s Mem. 12. Commissioner counters that the ALJ properly evaluated the previous decision, and that more relevant and recent evidence supports the ALJ's determination that Plaintiff did not need limitations for social contact. Comm'r's Mem. 9–10.

"In the leading Fourth Circuit case on this issue, *Albright v. Commissioner of Social Security Administration*, 174 F.3d 473, 476 (4th Cir. 1999), the Court explained that the SSA should consider prior findings made in a claimant's earlier application, but should not reflexively adopt those earlier findings so as to 'mechanistically merge two claims into one.'" *Denise H. v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-18-1756, 2019 WL 2076242, at *3 (D. Md. May 10, 2019). The Social Security Administration's Acquiescence Ruling ("AR") 00-1(4) interpreted

*Albright* as well as *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987) and held that "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period." AR 00-1(4), 2000 WL 43774, at *1 (Jan. 12, 2000). When considering a prior finding, adjudicators are directed to consider:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

*Id.*; *see also Monroe*, 826 F.3d at 187 (finding *Albright's* requirements apply only to final decisions by the SSA).

The ALJ in this matter (ALJ Pang) acknowledged that Plaintiff had filed prior a claim for SSI and DIB, and that a final decision had been issued on May 12, 2009. R. 174–75. ALJ Pang correctly stated that his responsibility was to "consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances." R. 174 (citing AR 00-1(4) and *Albright*, 174 F. 3d 473). ALJ Pang then discussed the prior ALJ's decision (ALJ Clark), noting the findings concerning Plaintiff's impairments. R. 175. These findings included a RFC limitation to "occasional contact with the general public." *Id.* In his assessment of ALJ Clark's decision, ALJ Pang noted that "over eight years have passed since this prior decision, affecting what would qualify as [Plaintiff's] past relevant work, as well as his severe impairments." *Id.* ALJ Pang stated that "evidence in the current filing is new and shows that [Plaintiff] has several

new chronic impairments requiring treatment and affecting his ability to do basic work activities." *Id.* In light of these factors, ALJ Pang "afford[ed] little weight to [ALJ] Clark's decision at the present time." *Id.* ALJ Pang then made an explicit observation that Plaintiff's "alleged onset date [in the new claims] is from before the date of his prior decisions, and, indeed, before the date of his prior alleged onset date." *Id.* at 175 n.1. ALJ Pang concluded that, "[a]s the evidence of record begins in 2015, the [RFC] in the current decisions is most reflective of the claimant's more recent functioning, which is overall more limited than during the period considered by ALJ Clark."[7] *Id.*

The Court finds ALJ Pang properly considered and explained his decision to assign little weight. Contrary to Plaintiff's assertion, the Court finds ALJ Pang's comment regarding the number of years that have passed pertains to the fact that Plaintiff is no longer the same individual that he was in 2005 when he filed his original claim. ALJ Pang reasoned that a RFC in 2015 should reflect more recent medical records and developments. These are considerations ALJs are required to use when evaluating and weighing previous findings. *See Denise H.*, 2019 WL 2076242, at *3 (finding the ALJ properly assessed a previous ALJ's findings where he assigned them "great weight" and "noted that '[t]he period being adjudicated immediately follows the previously adjudicated period but significant medical evidence has been received in connection with the current application that shows the claimant's conditions have changed since the date of the prior ALJ decision'"). Furthermore, a review of the record reveals ALJ Pang's determination of Plaintiff's current limitations in social interactions is supported by substantial

_____

[7] The Court views ALJ Pang's footnote explanation as evidence that he revisited his reasoning behind affording ALJ Clark's decision little weight and not evidence that he made his own determination as to Plaintiff's RFC before considering what weight to afford ALJ Clark's determinations.

evidence. *See id.* ("More crucially, the ALJ supported his findings with substantial evidence, . . . and the previous ALJ's finding in this case was not 'such an important and probative fact as to render the subsequent finding . . . unsupported by substantial evidence.'") (citing *Albright*, 174 F.3d at 477–78). ALJ Pang's assessment of Plaintiff's step three "paragraph B" criteria found Plaintiff only had mild limitations in interacting with others. R. 176. ALJ Pang cited to the fact that Plaintiff "testified that he has no trouble getting along with others, though he sometimes has trouble understanding them." *Id.* ALJ Pang also noted evidence showed Plaintiff was "typically cooperative and appropriate, though on one occasion [Plaintiff] mocked a provider." *Id.* In his narrative discussion assessing Plaintiff's RFC, ALJ Pang discussed Plaintiff's mental health impairments.[8] R. 178–79. ALJ Pang noted Plaintiff had a "history of mood symptoms including suicidal ideation, trouble concentrating, and trouble sleeping." R. 178. However, ALJ Pang also noted that Plaintiff was taking medication and reported "no side effects from his medications, which [Plaintiff] further noted were effective in limiting his symptoms." *Id.* ALJ Pang also noted that Plaintiff "stated he had been working on his GED, and demonstrated a normal mental status including unremarkable behavior, intact memory, average intellect, and good cooperation and mood." *Id.* ALJ Pang concluded that, although Plaintiff's records "show[ed] that he has several limitations as a result of his impairments, they also show[ed] that [Plaintiff] is not as limited as alleged." R. 179. ALJ Pang specifically noted that Plaintiff took several medications for his mental impairments "with good response." *Id.* Accordingly, after "taking [Plaintiff's] allegations into consideration," ALJ Pang stated that the RFC he determined was sufficient to

---

[8] This is relevant as ALJ Clark determined Plaintiff had "moderate difficulties" in social functioning in 2009 and cited Plaintiff's assertions that his bipolar disorder caused "manic episodes in which he becomes verbally, mentally and physically abusive to others, becomes very angry, and cannot deal with stressful situations." R. 120–23.

accommodate Plaintiff's limitations. *Id.* Therefore, ALJ Pang supported his determination that Plaintiff had only mild difficulties in social functioning and needed no additional limitations in his RFC with substantial evidence. In light of the aforementioned, the Court finds ALJ Pang properly considered the final decision in Plaintiff's previous claims for disability and supported his own findings concerning Plaintiff's social functioning with substantial evidence. *Denise H.*, 2019 WL 2076242, at *3. Accordingly, remand is not warranted on this issue.

### E. Plaintiff's argument that the Appeals Council's decision regarding the additional evidence is rendered moot by this Court's determination to reverse and remand the ALJ's decision on other grounds.

Plaintiff argues that the Appeals Council improperly denied considering new evidence that Plaintiff submitted after the hearing was held. Pl.'s Mem. 13. Plaintiff argues the evidence was material and relevant to his claim and would have changed the outcome. *Id.* Commissioner counters that the Appeals Council properly determined the evidence Plaintiff submitted would not have altered the ALJ's determination that Plaintiff was not disabled. Comm'r's Mem. 10. This issue is moot in light of this Court's decision to remand this matter on other issues raised in this appeal. Should a second hearing be held, the evidence in question would be available to the ALJ prior to the date of the hearing. The ALJ would be able to review the evidence and weigh it accordingly. Therefore, the Court declines to address the propriety of the Appeals Council's decision at this time.

**IV.     Conclusion**

Based on the foregoing, the Court **REVERSES** the ALJ's decision in part and

**REMANDS** this matter with specific instructions for the ALJ as outlined in the foregoing

opinion.  In making this decision, the Court offers no opinion on the ALJ's ultimate

determination that Plaintiff is not disabled within the meaning of the Social Security Law.


August 27, 2019                                                    _____/s/_____
                                                                   Charles B. Day
                                                                   United States Magistrate Judge


CBD/clc